IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTINA SALDANA, *ex rel.*
BRIANNA NICOLE SALDANA
and CHRISTOPHER ANTONIO
SALDANA,

    Petitioners,

v.

ERIC HOLDER, United States
Attorney General, *et al.*

    Respondents.

:
:
:
:
:
:

Case No. 3:15-cv-105

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING PETITIONERS'
MOTION FOR TEMPORARY RESTRAINING ORDER (DOC. #2)

---

    Hugo Saldana-Ventura, an illegal immigrant, was sentenced in this Court to 12 months imprisonment following his conviction on one count of Re-Entry of a Removed Alien – Removal Subsequent to a Felony Conviction. *United States v. Saldana-Ventura*, Case No. 3:14-cr-55. He was released from federal prison on March 31, 2015, and now faces summary deportation to Mexico.

    On March 23, 2015, Christina Saldana, on behalf of her minor children, Brianna and Christopher Saldana, filed a Complaint against United States Attorney General, Eric Holder, and Secretary of Homeland Security, Jeh Johnson, seeking a declaratory judgment that summary removal of Saldana-Ventura is contrary to law, and that certain immigration-related statutes are unconstitutional as applied to

Christina Saldana's children.  Petitioners maintain that the summary deportation of Hugo Saldana-Ventura, who is the primary financial support for his children, will violate the children's constitutional rights.  Doc. #1.

Along with the Complaint, Petitioners filed a Motion for Temporary Restraining Order, Doc. #2, asking the Court for an Order "restraining the Department of Justice from surrendering their father Hugo Saldana to the Department of Homeland Security upon the termination of his incarceration and/or the Department of Homeland Security from summarily removing Hugo Saldana from the United States until a disposition [of] their Complaint for Declaratory Judgment has been filed."  Doc. #2, PageID#7.

The Court held an informal telephone conference on March 26, 2015, during which Petitioners' counsel indicated that he planned to file an Amended Complaint.  That Amended Complaint, Doc. #7, was filed on March 27, 2015.  The Court then heard oral argument on the Motion for Temporary Restraining Order on March 30, 2015.  Counsel for Respondents has assured the Court that Saldana-Ventura will not be deported before the Court issues a ruling on that motion.

In considering a motion for a temporary restraining order or a preliminary injunction, a court must consider four factors:  "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."  *City of Pontiac Retired Employees Ass'n*

*v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). The court must make specific findings concerning each of these factors, unless fewer factors are dispositive of the issue. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).

The Sixth Circuit has noted that, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)). Accordingly, the Court turns first to the question of whether Petitioners are likely to succeed on the merits of their constitutional claims.

In *Hamdi v. Napolitano*, 620 F.3d 615 (6th Cir. 2010), the minor child of an illegal alien filed suit, alleging that his mother's removal from this country violated his own rights as a United States citizen. He sought a court order prohibiting her removal. The court held that, although the district court had jurisdiction to consider the question of whether the minor child's constitutional rights would be violated, it lacked authority to grant the relief requested, because district courts are specifically prohibited by law from reviewing orders of removal. *See* 8 U.S.C. § 1252(b)(9). The court in *Hamdi*, however, left open the possibility that other kinds of remedies might be available to the minor child.[1] 620 F.3d at 629 n.16.

---

[1] Given that the Court finds that Petitioners in this case are unlikely to succeed on the merits of any of their constitutional claims, the Court need not address the question of what kinds of remedies might be available. The Court notes, however, that even if the Court were to declare that Saldana-Ventura's summary removal

3

Seizing on that possibility, Petitioners in this case seek a declaratory judgment that the federal statutes setting forth the summary removal procedures for illegal aliens who are convicted felons, *i.e.*, 8 U.S.C. §§1182, 1225(b)(1)(A), 1227(a)(1)(B), 1228, 1242, and 1326, are unconstitutional as applied in this case. More specifically, in the Amended Complaint, Petitioners allege violations of the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments, the Eighth Amendment, the Ninth Amendment, and the Tenth Amendment,[2] as follows:

> 8. The summary removal of the Plaintiffs' father constitutes a form of cruel and unusual punishment for the Plaintiffs,
>
> 9. The separation of the Plaintiffs from their father will deprive these children of the continued love, affection, care and financial support of their father in violation of the Ninth Amendment to the United States Constitution and without due process of law for these Plaintiffs,
>
> 10. The separation of the Plaintiffs from their father through summary removal treats these children differently from other U.S. Citizen children in the State of Ohio since the standard relating to children in domestic and juvenile law in the State of Ohio is that of the best interest[s] of the child and thus is violative of the Equal Protection Clause[.]

---

violated the constitutional rights of his children, *Hamdi* would not appear to permit the Court to enjoin his removal.

[2] Counsel for Petitioners conceded at oral argument that there is no private right of action under the Tenth Amendment, which simply provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

Doc. #7, PageID#21.[3]

Petitioners have cited to no authority in support of the alleged constitutional violations. The Court has conducted its own legal research, and has found no case law to support any of Petitioners' constitutional claims. In fact, it appears that every court that has addressed similar claims has found that "a parent's otherwise valid deportation does not violate a child's constitutional right." *Payne-Barahona v. Gonzales*, 474 F.3d 1, 2 and n.1 (1st Cir. 2007) (collecting cases from numerous circuits); *Martial-Emanuel v. Holder*, 523 F. App'x 345, 350 (6th Cir. 2013) ("This Circuit and others have held on numerous occasions that the removal of aliens does not violate either their constitutional rights or the constitutional rights of their U.S. citizen family members.").

Petitioners' first allegation, that Saldana-Ventura's summary removal "constitutes a form of cruel and unusual punishment for the Plaintiffs," implicates the Eighth Amendment to the United States Constitution. However, the Cruel and Unusual Punishment Clause of the Eighth Amendment provides protection only to

---

[3] Petitioners also allege: "The separation of the Plaintiffs from their father violates the principles of international treaties of which the United States is a signatory: The Universal Declaration of Human Rights, UNGA, Resolution 217 (III), 10 Dec., 1948, International Covenant on Economic, Social and Cultural Rights, UNGA Res. 220A (XXI), 16 Dec. 1966 (IESCR), Universal Declaration Art. 12 ECHR, Convention on the Rights of the Child, 1989 UNGA Res. 44/25, 20 Dec. 1989, Arts. 9 and 16." Petitioners have not expounded on this argument. The Court notes, however, that the First Circuit has held that these treaties "do not have the force of domestic law," and even if they did, "the clear intent of Congress [concerning immigration law] would control." *Payne-Barahona v. Gonzales*, 474 F.3d 1, 3 (1st Cir. 2007).

persons convicted of a crime. *Whitley v. Albers*, 475 U.S. 312, 318 (1986). Since Saldana-Ventura's children have not been convicted of a crime, their Eighth Amendment rights are not implicated. Moreover, the Eighth Amendment prohibition against cruel and unusual punishment does not apply to removal proceedings, because "deportation does not constitute punishment." *Elia v. Gonzales*, 431 F.3d 268, 276 (6th Cir. 2005) (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984)).

Petitioners next allege a violation of their Ninth Amendment rights. The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Sixth Circuit has held that this amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). However, even if it did confer substantive rights, Petitioners' claims lack merit.

Petitioners allege that Saldana-Ventura's deportation will deprive the children of his continued love, affection, care and financial support, in violation of their Ninth Amendment rights. This argument has been rejected by the courts. *See Cervantes v. INS*, 510 F.2d 89, 91-92 (10th Cir. 1975) (holding that the "incidental impact on aliens' minor children," caused by the operation of the deportation laws, does not violate the children's Ninth Amendment rights); *Papakonstantinou v. Civiletti*, 496 F. Supp. 105, 111 (E.D.N.Y. 1980) ("Nor does the [N]inth [A]mendment prevent the deportation of the alien parents of a citizen

6

child, where the impact on the child, while strong, is nevertheless incidental to the enforcement of the immigration laws.").

Petitioners also allege that summary deportation of their father will violate their procedural due process rights. A required element of any procedural due process claim, however, is a protected liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Petitioners have cited to no authority indicating that children have a protected liberty or property interest that would entitle them to notice and a meaningful opportunity to be heard before their parent is deported. Notably, the Sixth Circuit has held that illegal aliens who are subject to deportation have no protected property or liberty interest in discretionary relief such as cancellation of removal. *Martial-Emanuel*, 523 F. App'x at 350. In the same case, the court held that, despite the hardship on family members left behind, deportation does not violate any *substantive* due process rights. *Id.*

Petitioners next allege that the summary deportation of their father, following his release from prison, violates their Equal Protection rights, because they are treated differently from other U.S.-born children. Petitioners note that Ohio's domestic and juvenile law applies the "best interests of the child" standard, and removal proceedings do not take into account what is in the best interests of the minor children.

As an initial matter, the Court notes that the "best interests" standard is typically applied in cases which involve the children directly, such as child custody disputes or the termination of parental rights, neither of which is at stake here. In

a case involving the deportation of a parent, however, the child is affected only indirectly. *See Cabrera-Alvarez v. Gonzales*, 423 F.3d 1006, 1010-11 (9th Cir. 2005) (noting distinction); *Lopez v. Franklin*, 427 F. Supp. 345, 349-50 (E.D. Mich. 1977) (same). Moreover, it will very rarely be in a child's best interests to have a parent deported. Therefore, if this standard were to be applied in all removal proceedings indirectly impacting a child, this would create a huge loophole in the law, and deportations would be very few and far between. *See, e.g., Lopez*, 427 F. Supp. at 349 (noting that "an argument could be made in every one of these cases that from an objective socio-economic perspective[,] the 'best interests of the child' would be to remain in the United States rather than return to the parents' native land.").

At oral argument, counsel for Petitioners further explained his equal protection argument as follows. Whereas other U.S.-born children are able to reunite with their parents when the parents are released from prison, Petitioners cannot do so because their father is subject to deportation, the distinction being based on ethnicity and national origin. Similar equal protection arguments have repeatedly been rejected by the courts. *See Hernandez-Lara v. Holder*, 563 F. App'x 401, 403 (6th Cir. 2014) (rejecting claim that the "exceptional and extremely unusual hardship" showing required for cancellation of removal "adversely affects only those members of the class of United States-citizen children . . . whose parents are subject to removal from this country," and noting that it is "well-settled" that "a United States-citizen child's constitutional rights are

8

not implicated by the government's otherwise valid decision to deport that child's parents."); *Application of Amoury*, 307 F. Supp. 213, 216 (S.D.N.Y. 1969) (rejecting equal protection claim of child of deportable alien, finding no "invidious discrimination or arbitrary classification," and noting that "[t]he situation which confronts the infant is due to no act or conduct of the government. It exists because of the conduct of the infant's parents which renders them deportable. The citizen infants of other aliens remain here because their parents are not deportable."); *Delgado v. INS*, 637 F.2d 762, 763 (10th Cir. 1980) (holding that separation of children from father as a result of deportation did not violate children's Fifth or Fourteenth Amendment rights).

Based on the foregoing, the Court finds that there is little or no likelihood that Petitioners will prevail on the merits of *any* of their claims. Courts have uniformly held that Congress has the power to regulate immigration, and "[t]he incidental impact on aliens' minor children caused by the enforcement of duly-enacted conditions on aliens' entrance and residence does not create constitutional problems." *Cervantes*, 510 F.2d at 92. The implications of finding a constitutional violation would be far-reaching. As noted in *Payne-Barahona*:

> deportations of parents are routine and do not of themselves dictate family separation. If there were such a right, it is difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods when the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service.

9

474 F.3d at 3. *See also Marin-Garcia v. Holder*, 647 F.3d 666, 672-74 (7th Cir. 2011) ("If an alien could avoid the consequences of unlawful entry into the United States by having a child, it would create perverse incentives and undermine Congress's authority over immigration matters."); *Ayala-Flores v. INS*, 662 F.2d 444, 446 (6th Cir. 1981) (noting that a finding that a parent's deportation deprives his children of their rights as U.S. citizens "would create a substantial loophole in the immigration laws, allowing all deportable aliens to remain in this country if they bear children here.").

In the Court's view, the extreme lack of likelihood of success on the merits of Petitioners' claims decidedly weighs against a Temporary Restraining Order. Although the children will undoubtedly be irreparably harmed if the motion is not granted, and although the issuance of the order would not appear to cause substantial harm to others, it cannot be said that the public interest would be served by issuance of a temporary restraining order. Society has a clear interest in enforcing its immigration statutes, and, as discussed herein, the law is clearly established that the otherwise-valid deportation of an illegal alien does not violate the constitutional rights of that alien's U.S.-born children.

For all of these reasons, the Court OVERRULES Petitioners' Motion for Temporary Restraining Order, Doc. #2. As previously scheduled, the Court will hold a follow-up telephone conference on April 2, 2015, at 4:00 p.m., to discuss the need, if any, for further proceedings in this case.

Date: April 2, 2015

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE